IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

F. S. PIEKARCZYK,                          )
                                           )
                Plaintiff,                 )
                                           )
        vs.                                )        No. 04 C 7935
                                           )
CITY OF CHICAGO, a municipal               )
corporation, by and through Mayor          )
Richard Daley and Pamela Harris,           )
Administrative Hearing Officer, and an     )
un-named Police Officer,                   )
                                           )
                Defendants.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff F. S. Piekarczyk brought this action against the City of Chicago, Pamela

Harris, an Administrative Hearing Officer, and an unnamed police officer, alleging violations

of his Fourth and Fourteenth Amendment rights. The allegations arise from a series of

citations plaintiff received, a series of administrative adjudications, and a building inspection.

Defendants have moved to dismiss the complaint in its entirety for failure to state a claim upon

which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6), and for lack of subject matter

jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). For the following reasons, defendants'

motion to dismiss is granted.

## BACKGROUND

Plaintiff, a resident of Chicago, originally brought this action on December 8, 2004. On

March 3, 2005, plaintiff was granted leave to file an amended complaint, which he titled his

second amended complaint. Upon submission of the amended complaint, defendants moved

to strike and dismiss plaintiff's second amended complaint. Without resolution of that motion,

plaintiff filed a third amended complaint on September 6, 2005. After some confusion,

defendants brought this motion to dismiss plaintiff's third amended complaint.

Plaintiff's latest complaint alleges 15 counts of violations of his constitutionally-protected rights, namely, his Fourth and Fourteenth Amendment rights. The counts do not stem from the same event but, rather, catalogue a series of events in which plaintiff claims defendants violated his civil rights. Counts I through IV, VI, VII, and X arise from citations plaintiff received regarding his automobile on April 12, 2001, September 20, 2000, January 18, 2002, May 15, 2002, June 4, 2004, August 2, 2005, and September 9, 2004, respectively. Specifically, plaintiff alleges that the citations given for parking in or blocking an alley, for failure to display front and back plates, and for failure to properly display a city sticker, were unconstitutional because they violated plaintiff's Fourth Amendment right to be free from illegal search and seizure, and his Fourteenth Amendment privacy interest. Similarly, Count V arises from an allegedly illegal towing of his vehicle from the same location, in violation of his Fourth and Fourteenth Amendment rights. Plaintiff alleges that the car was always parked on private property and, therefore, defendants exceeded their jurisdiction in ticketing the automobile and invading plaintiff's privacy. Count IX also alleges violation of plaintiff's Fourteenth Amendment equal protection rights, and arises from a citation plaintiff received for parking, in violation of a street cleaning order. Plaintiff contends that there were no visible no-parking signs and that plaintiff was not given an opportunity to defend his individual innocence. Count XV similarly alleges violation of his rights due to a citation entered against him for failure to cut the weeds on his property.

Counts XI, XII, and XIV stem from allegedly illegal actions taken in administrative adjudicative hearings in January 2001, April 2001, and December 2003, respectively. Count XI refers to an administrative hearing in which plaintiff was defending himself against liability for his dog biting an individual. Because plaintiff came prepared to defend his brown dog, and later discovered that the allegation was against his white dog, plaintiff contends that the denial

of a continuance to correct the error violated his procedural and substantive due process rights. Count XII arises regarding an administrative housing hearing, in which plaintiff was not afforded the right to defend himself before being charged guilty, in violation of his due process rights. Finally, Count XIV arises from an administrative hearing regarding failure to comply with building codes. Plaintiff contends that his due process rights were once again violated because the inspector did not appear as a witness and plaintiff was prohibited from calling his own witnesses.

Lastly, Count XIII alleges violations of plaintiff's Fourth and Fourteenth Amendment rights in connection with an October 7, 2003, inspection of a building he owns. Based on a complaint by a second floor tenant regarding the heat, an inspector came to investigate. Because the inspector entered the third floor of the apartment without his permission, plaintiff alleges that his rights of privacy and freedom from unreasonable search were violated.

Plaintiff's complaint suggests that this court has jurisdiction to hear his claims under 42 U.S.C. § 1983, which protects a citizen from "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," by an action of any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." As plaintiff has alleged violations of his constitutional rights by state actors, the action was properly brought under § 1983.

For the first time in his reply brief, plaintiff asserts that because the state actors acted in a racially and ethnically discriminatory manner, they should also be held liable under 42 U.S.C. § 1985. Claims under § 1985 must allege facts of a racial or otherwise class-based invidious discriminatory animus. Nowicki v. Ullsvik, 69 F.3d 1320, 1325 (7th Cir.1995). And although plaintiff does allege racial animus, his claim fails because he cannot initially raise a claim in a response brief without first setting it forth in the complaint. See Harrell v. U.S., 13

F.3d 232, 236 (7th Cir.1993) ("If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint"); Thomason v. Nachtrieb, 888 F.2d 1202, 1205 (7th Cir.1989) ("It is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss"); Catchings v. City of Chicago, 2005 WL 1027127, *4 (N.D.Ill.2005) ("It is axiomatic that a plaintiff cannot raise a new claim for the first time in his response brief"). Although some Seventh Circuit opinions have made exceptions to this rule (see, e.g., Hrubec v. National R.R. Passenger Corp., 981 F.2d 962, 963 (7th Cir.1992) (indicating that a complaint should not be dismissed where additional facts alleged outside of the complaint are consistent with the complaint)), plaintiff's § 1985 claim still fails because his conclusory allegations of racial and ethnic animus are insufficient to state such a claim. Because plaintiff has failed to allege any connection between racial animus and the alleged constitutional violations, his § 1985 claim cannot proceed. See Webb v. Ewert, 2000 WL 804668, *4 (N.D.Ill.2000); Gardner v. City of Waukegan, 1999 WL 410009, *7 (N.D.Ill.1999); Naguib v. Illinois Dept. of Professional Regulation, 986 F.Supp. 1082, 1092 (N.D.Ill.1997). Therefore, we will only address plaintiff's § 1983 claims.

## DISCUSSION

In reviewing a motion to dismiss under FED. R. CIV. P. 12(b)(6), we must accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). The complaint should be dismissed only if the plaintiffs "failed to allege any set of facts upon which relief may be granted" Id. See also Conley v. Gibson, 255 U.S. 41, 45-46 (1957).

Defendants argue that plaintiff's claims in Counts I through V, IX, XI through XII, and

XV, must fail because they are time-barred. As defendants correctly note, and plaintiff does not deny, we apply Illinois' two-year personal injury statute of limitations to actions arising under § 1983. <u>Williams v. Lampe</u>, 399 F.3d 867, 870 (7th Cir.2005). Therefore, any claims arising before December 8, 2002 – two years prior to the initial filing in this action – are barred by the statute of limitations. That includes Count I from April 12, 2002; Count II from September 20, 2000; Count III from January 18, 2002; Count IV from May 15, 2002; Count V from June 2002; Count IX from June 13, 2001; Count XI from January 2001; Count XII from April 2001; and Count XV from September 18, 2001.

Plaintiff concedes that such claims are time-barred, but suggests that he included them to "compile a Catalogue of Harlotry and Crime by the defendant's agents" to "show[] a pattern of behavior" (plf's response at 6). For that reason plaintiff encourages us to lengthen the limit for § 1983 claims, where plaintiff presents a significant number of claims (*id.*). The Supreme Court, however, has declared: "Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system." <u>Board of Regents of University of State of N.Y. v. Tomanio</u>, 446 U.S. 478, 487 (1980). In the § 1983 context, the statute of limitations recognizes the importance of the state's judgment of the "proper balance between the policies of repose and the substantive policies of enforcement." <u>Wilson v. Garcia</u>, 471 U.S. 261, 271 (1985). *See also* <u>Hardin v. Straub</u>, 490 U.S. 536, 538-539 (1989). We base our borrowing of the state personal injury statute of limitations for § 1983 claims on that reasoning (*id.*), and we will not disturb that process today. Therefore, we dismiss Counts I-V, IX, XI-XII, and XV.

We now turn to Counts VI , VII, VIII, and X, alleging that defendants violated plaintiff's constitutional rights by entering the property on which his automobile was sitting and ticketing him for parking in and blocking an alley (Counts VI and VII), for failing to

display front and rear license plate (Count VIII), and for failing to properly display city sticker (Count X). Plaintiff makes two claims: that police officers did not have jurisdiction to enter onto the private property and that such entrance violated his Fourteenth Amendment privacy interests. Defendants argue, and we agree, that the jurisdiction argument is an effort to argue the merits of the citations, not the merits of plaintiff's civil rights claim. Therefore, we will focus on plaintiff's privacy argument. Plaintiff's privacy argument seemingly encompasses two rights – his privacy right on his private property, from which he should be free from unreasonable searches or seizures, and his privacy right to live his life free from the intrusion that has come from defending unreasonable parking citations. The former is essentially a Fourth Amendment claim and the latter can be viewed as either a Fourth Amendment seizure claim or a Fourteenth Amendment substantive due process claim.

Plaintiff's Fourth Amendment claim regarding the alleged search and/or seizure of his automobile lacks merit. The actions of which plaintiff complains were neither searches nor seizures under the Fourth Amendment. A search "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed," and a seizure "occurs when there is some meaningful interference with an individual's possessory interest in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). Because plaintiff's complaint essentially is a trespass claim (see plf's response at 8, stating, "[t]here was no search in the sense of looking for something but there was an unwarranted entry onto the property"), and because the area onto which the police trespassed is not protected by the Fourth Amendment, his claim must fail.

In Oliver v. United States, the Supreme Court defined the difference between a search or seizure under the Fourth Amendment and trespass. "The law of trespass recognizes the interest in possession and control of one's property and for that reason permits exclusion of

unwanted intruders. But it does not follow that the right to exclude conferred by trespass law embodies a privacy interest also protected by the Fourth Amendment ... the law of trespass confers protections from intrusion by others far broader than those required by Fourth Amendment interests." 466 U.S. 170, 183, n15 (1984).

The Fourth Amendment only prohibits unreasonable searches in a citizen's home and the curtilage around his home. United States v. French, 291 F.3d 945, 951 (7th Cir.2002) (defining curtilage as "'the area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home'"). In French, the Seventh Circuit held that a gravel driveway at defendant's residence was not part of the home's curtilage and therefore was not entitled to Fourth Amendment protections. Like the driveway in French, plaintiff claims a privacy right to an alley adjacent to his home, seemingly accessible to the general public and not clearly designated as plaintiff's property. In fact, it is unclear whether the alley on which plaintiff's vehicle was parked was in fact his property at all (plf's response at 1). Therefore, because plaintiff's claim essentially amounts only to a trespass claim, we find that it falls outside the protections of the Fourth Amendment.

Thus, we turn to the question of whether the unreasonable tickets and subsequent hearings interfered with plaintiff's liberty so as to violate his rights under the Fourth or Fourteenth Amendment. Plaintiff claims that the defendants intruded on his privacy interest in living his life free from imposition. Essentially, he argues that the time spent defending his unreasonable automobile citations was an intrusion into his privacy, which is protected by the Constitution. Plaintiff cites United States v. Place, 462 U.S. 696 (1983)[1], to argue that he has a constitutionally-protected right in his life "itinerary," which was violated by the repeated

---

[1] Plaintiff points us to Sodal v. County of Cook, 942 F.2d 1084 (7th Cir.1991), but refers to language the Seventh Circuit had quoted from Place.

appearances he made to defend the unreasonable citations. Specifically, he cites the following language: "Particularly in the case of detention of luggage within the traveler's immediate possession, the police conduct intrudes on both the suspect's possessory interest in his luggage as well as his liberty interest in proceeding with his itinerary." Place, 462 U.S. at 708. And although plaintiff makes a creative argument, his case can easily be distinguished from Place, a Fourth Amendment case wherein the Supreme Court held that a 90-minute detention of passenger's luggage was an unreasonable seizure in violation of passenger's Fourth Amendment rights. Unlike the issue in Place, plaintiff's attendance at the hearings was not a "seizure" within the meaning of the Fourth Amendment. See DiBella V. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir.2005) (holding that attendance at one's trial is not a government "seizure" in a § 1983 action for violation of plaintiff's Fourth Amendment rights). And plaintiff's ability to walk away from the hearings further indicates that his time spent defending against his citations was not a seizure within the meaning of the Fourth Amendment. Wilkins v. May, 872 F.2d 190, 192 (7th Cir.1989). Therefore, plaintiff's argument that his repeated attendance at administrative hearings violated his Fourth Amendment right to be free from seizure fails.

We are left to determine whether defendants' actions violated plaintiff's due process rights under the Fourteenth Amendment. First, we note that there has been no violation of plaintiff's procedural due process rights because he has been afforded all the process he is due. "[D]eprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy." Zinermon v. Burch, 494 U.S. 113, 115 (1990) (citing Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517 (1984)). Where,

as here, there are remedies at state law, parking tickets and automobile citations fall under the governance of <u>Zinermon</u> and its predecessors. *See* <u>Scheidecker v. City of Napa</u>, 1994 WL 589336, \*3 (N.D.Cal.1994) (where the state provided a remedy for conversion for the unlawful impounding of plaintiff's vehicle, there was no procedural due process violation); <u>Crawford v. Parron</u>, 709 F.Supp. 234, 235 (D.D.C.1986) (plaintiff's § 1983 claim for a right to a hearing on his parking ticket could not proceed in federal court where the city provided an adequate post-deprivation remedy). In this case, the Chicago Municipal Code §§ 2-14-076, 2-14-102 (2004) provides state-law remedies through administrative hearings and state court appeals. In fact, plaintiff took advantage of such remedies and was able to (in some cases, successfully) contest the citations. Therefore, he cannot proceed on a procedural due process claim.

The concept of substantive due process, however, suggests that depriving a person of life, liberty or property can violate the due process clause of the Fifth and Fourteenth Amendments, even if there are no procedural irregularities. <u>Coniston Corp. v. Village of Hoffman Estates</u>, 844 F.2d 461, 465 (7th Cir.1988). The scope of substantive due process is "very limited and protects plaintiffs only against arbitrary government action that 'shocks the conscience.'" <u>Montgomery v. Stefaniak</u>, 410 F.3d 933, 939 (7th Cir.2005). In fact, the Supreme Court has cautioned against extending that right because, in so extending, we "place the matter outside the arena of public debate and legislative action." <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720 (1997). Because defendants' actions in ticketing plaintiff's vehicle, even when viewed in the light of multiple administrative hearings, do not shock the conscious, we cannot find a violation of plaintiff's substantive due process rights. *See* <u>Kelly v. Rice</u>, 375 F.Supp.2d 203, 209 (S.D.N.Y.2005) ("Nothing about the issuance of a parking ticket implicates the rarely-used doctrine of 'substantive due process'"). Therefore, we dismiss Counts VI, VII, and VIII.

We now turn to Count XIII, alleging violations of plaintiff's Fourth and Fourteenth Amendment rights. This claim arises from defendants' entrance into plaintiff's building, including the third floor, to inspect a heat complaint by the second floor tenant. Plaintiff also alleges that defendants engaged in a civil conspiracy to cover up the constitutional violations. Defendants argue that the inspection was lawful because it complied with the requirements of an administrative search. Specifically, they contend that the citizen complaint gave the inspector a legal right (and obligation) to inspect the building (*see* Municipal Code of Chicago § 13-12-100 (2004)), and that inspection could reasonably have led him to the third floor. As to the conspiracy charge, defendants argue that plaintiff has failed to adequately plead such an allegation.

Defendants contend that this claim is governed by <u>Camara v. Municipal Court of the City and County of San Francisco</u>, 387 U.S. 523 (1967). In <u>Camara</u>, the Supreme Court held that a building owner had a constitutional right to require a building inspector to obtain a search warrant before permitting him entry into his building, absent emergency situations. Although <u>Camara</u> seemingly supports plaintiff's contention that the search was illegal without a warrant, defendants point to language indicating that where "there has been a citizen complaint or there is other satisfactory reason for securing immediate entry," an inspector need not seek a warrant. <u>Camara</u>, 387 U.S. at 539-540. In this case, a citizen did complain about the heat on the second floor (cplt, at ¶ 75), so the inspector had the right to enter that floor without a warrant. Plaintiff contends, however, that the inspector did not have a right to enter the third floor without a warrant because the complaint was confined to an apartment on the second floor.

We agree with defendants that <u>Camara</u> and its progeny govern this case. Although <u>Camara</u> requires warrants to inspect a building, there are several exceptions. First, <u>Camara</u>'s

warrant requirement only goes into effect when an inspector has been denied entry into the building. 387 U.S. at 539 ("as a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused..."). Nowhere in plaintiff's complaint does he state that he refused the inspector entry.[2] In fact, it appears that his tenant called the inspector and requested his arrival. *See* United States v. Matlock, 415 U.S.164, 169 (1974) ("voluntary consent of any joint occupant of a residence to search the premises jointly occupied is valid against the co-occupant"); Gardner v. McGroarty, 68 Fed.Appx. 307, 311 (3d Cir.2003) (warrantless administrative search did not violate Fourth Amendment where defendants entered the building through unlocked doors and obtained permission from authorized on-site manager or tenants to search the apartment building). Second, Camara's warrant requirement apparently makes an exception for citizen complaints. Camera, 387 U.S. at 540. *See also* U.S. v. Roheig, 98 F.3d 1506 (6th Cir.1996) (warrantless entry did not violate owner's Fourth Amendment rights because the entry was based on complaint of citizen neighbors responding to the loud noises emanating from owner's home). In Camara, the Supreme Court noted that, ultimately, it comes down to the controlling standard of reasonableness. In this case, we think it was reasonable for the building inspector responding to a tenant's complaint, and invited in by such tenant, to inspect the building without a warrant, including any trips to the third floor necessary to discover the problem with the heat. Therefore, we find that plaintiff's Fourth Amendment rights were not violated.

Additionally, Count XIII alleges that defendants engaged in a conspiracy to hide the violation of plaintiff's constitutional rights. Specifically, plaintiff contends that the complaint

---

[2]Although plaintiff does indicate that a prior third-floor tenant had refused a building inspector entry (plf's response at 14), he does not allege that anyone refused this particular building inspector entry to deal with this particular heating situation.

was withdrawn in order to conceal liability for defendants' actions. As defendants note, the applicable Illinois law for civil conspiracy requires a plaintiff to allege "(1) an agreement; (2) by two or more persons; (3) to perform an overt act or acts; (4) in furtherance of the agreement/conspiracy; (5) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (6) that causes injury to another." Bressner v. Ambroziak, 379 F.3d 478, 482 (7th Cir.2004). Because plaintiff did not adequately plead an unlawful purpose or unlawful means, he has not sufficiently pled a conspiracy. Therefore, we dismiss Count XIII.

Finally, Count XIV also alleges violations of plaintiff's civil rights. The claims arise from an administrative hearing regarding plaintiff's compliance with building codes, wherein plaintiff was found liable without any opposing witness or specific allegations of a temperature deficit. Defendants cite Van Harken v. City of Chicago, 103 F.3d 1346 (7th Cir.1997), to argue that plaintiff's due process rights were not infringed because there is no absolute right to confront witnesses in civil cases, and there were safeguards in place to protect plaintiff's due process rights. In Van Harken, the Seventh Circuit addressed the issue of whether a police officer had to appear in person at a hearing to adjudicate a parking ticket. The court found that the costs of requiring the police officer to appear outweigh the possible benefits of confronting the officer, and that the ability to subpoena the officer was sufficient safeguard to satisfy due process requirements. Defendants argue that "[a]djudication of the building violation is procedurally indistinguishable from the parking ticket adjudicative system upheld in Van Harken (defs' memo at 10). In Prudent Properties v. City of Chicago, 2000 WL 311173 (N.D.Ill.2000), the court addressed that very issue. Although the court noted that the costs weighed heavier in the building code violation context than in the parking ticket context, it held that the absence of the building inspector from the adjudicative hearing did not violate plaintiff's due process rights. Relying on Van Harken, the court found that because the

Municipal Code of Chicago allows the plaintiff to subpoena the building inspector, the rules

regarding the adjudicative process did not violate his due process rights. We come to the same

conclusion in this case and dismiss Count XIV for failure to state a claim upon which relief can

be granted.

Because we have not found sufficient allegations of a federal constitutional violation,

plaintiff cannot proceed with his allegations that municipal policy was the cause of such

wrongs. Therefore, we also dismiss all claims arising under <u>Monell v. New York Dep't of</u>

<u>Social Services</u>, 436 U.S. 658 (1978).

<u>CONCLUSION</u>

For the foregoing reasons, we grant defendants' motion to dismiss plaintiff's complaint,

and dismiss the complaint in its entirety.

JAMES B. MORAN
Senior Judge, U. S. District Court

_March 3_ , 2006.